955 A.2d 821

**Marvie Edward BRYE**

v.

**STATE of Maryland.**

**No. 01482, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 3, 2008.

106

Kellie M. Black (Nancy S. Forster, Public Defender on the brief), Baltimore, for appellant.

Gary E. O'Connor (Douglas F. Gansler, Attorney General on the brief), Baltimore, for appellant.

Argued before ZARNOCH, SHARER, J. FREDERICK (Retired, Specially Assigned) * ADKINS, SALLY D., JJ.

ADKINS, J.

Marvie Edward Brye, appellant, was convicted by a jury in the Circuit Court for Baltimore County of second degree assault. He raises the following two questions for our review:

I. Did the trial court err by failing to advise appellant of the "nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any[,]" as required by Md. Rule 4–215(a)(3)?

II. Did the trial court err in admitting irrelevant and prejudicial evidence?

We find no error in the advisements relating to the charge on which appellant was convicted, and that appellant failed to preserve his objection to the challenged testimony. In these circumstances, we shall affirm the conviction.

## FACTS AND LEGAL PROCEEDINGS

On the afternoon of March 27, 2006, appellant's cousin Christopher Jones, Terri Lomax (the mother of Jones' eight-year-old daughter), and Dr. Craig Lane (Lomax's boyfriend), met at Lomax's apartment in Baltimore County. Although the meeting was initially cordial, an argument developed. Mr. Jones produced a handgun, then threatened and assaulted Dr. Lane. While holding Lane at gunpoint, Jones called appellant and demanded that he come over to the house. Appellant did as asked.

When appellant arrived, he indicated that he was sorry for not coming sooner and offered to shoot Lane for Jones.

---

* Sally D. Adkins, now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

Appellant then hit Lane in the face and upper body. A fight ensued, during which Lane managed to flee the house and call the police. The police responded to the area and arrested appellant a few blocks away from Lomax's home.

The day after the altercation, on March 28, 2006, a statement of charges was filed against appellant in the District Court for Baltimore County, charging him with two counts of false imprisonment, two counts of first degree assault, and one count each of second degree assault and attempted armed robbery. *See* Md. Rule 4–211(b). On that date, appellant made his initial district court appearance. Both appellant and the district court commissioner signed a form certifying, *inter alia,* that the commissioner had "INFORMED Defendant of each offense charged and of the allowable penalties, including mandatory penalties, if any[;]" "REQUIRED Defendant to read the Notice of Advice of Right To Counsel[;]" and "AD-VISED Defendant that an appearance for trial without a lawyer may result in the Court determining that counsel was waived and the Defendant may have to proceed without a lawyer."

Thereafter, the State's Attorney for Baltimore County filed an information against appellant in the Circuit Court for Baltimore County. *See* Md. Rule 4–201(c); Md. Rule 4–211(c). That information superceded the earlier statement of charges and charged appellant with first degree assault, use of a handgun in the commission of a crime of violence, use of a handgun in the commission of a felony, false imprisonment, and possession of marijuana.

On May 24, 2006, appellant appeared for arraignment in the Circuit Court for Baltimore County. The court explained to appellant, "This is not the trial of your case; it's an arraignment. I'm supposed to make you understand what you're charged with and the maximum penalties and advise you with regard to your right to an attorney." The court then advised appellant:

> You're charged with first-degree assault, which carries up to twenty-five years; use of a handgun in a felony, carries

twenty years with a mandatory minimum of five without parole; use of a handgun in a crime of violence, and that carries *twenty-five years without parole;* false imprisonment, which carries up to three years; possession of *a handgun,* one year or $1,000 or both.[1] (Emphasis added.)

On June 30, 2006, an attorney with the Public Defender's Office entered his appearance on appellant's behalf. On July 31, 2006, the morning of the trial, defense counsel requested a postponement. In support of his motion, defense counsel informed the court that he had just received notice that the State was seeking a mandatory penalty on first degree assault because appellant was alleged to be a repeat offender. Counsel also explained that he had not yet received the State's response to his request for discovery, and that appellant "indicated to me that he did not want to postpone it himself." The court responded that it would grant a postponement, even over appellant's objection, in order to avoid appellant "complaining that he wasn't properly represented" via a post-conviction proceeding.

Next, the trial court asked "What's the mandatory?" Both parties agreed that the mandatory penalty for first degree assault for a repeat offender was "ten without parole." The court then informed appellant, "you're facing ten years without the possibility of parole. And they just notified your attorney about that this past Friday. So, he's asking for a postponement so he can prepare a defense for you. I assume you don't want to go forward and take the ten without parole, do you?" Appellant responded that he did not, but that he was ready for trial because he had been "incarcerated since March" and was "not involved in this situation." The trial court responded, "Right. Sir, the State doesn't agree with that. The State says you're guilty and that they want ten without parole. So, I'd suggest you let [defense counsel] look

---

1. When appellant asked why there were so many charges, the court referred to the indictment filed in district court and explained, "Well, that indictment was the charges you got—what the police officer charged you with. And then this went before the Grand Jury and the State's Attorney's Office added some charges."

into what your statement is and what's going on." The court then granted the postponement.

As the court and counsel discussed re-setting the case for trial in 30 to 60 days, appellant repeatedly asked if he had to take the postponement. The court informed him, "No. You can represent yourself if you want." The parties, the court, and appellant continued to converse, during which the State informed the court that it was ready to proceed to trial. Appellant responded that he too was ready to proceed to trial, stating that if his attorney was not ready "now[,]" he would "never be ready." The court responded: "He just got the notice on Friday that you're facing ten without parole." The following colloquy ensued:

[APPELLANT]: Well, I didn't do nothing your honor. So, I figure the court will understand the situation.

[THE COURT]: Well, you see, I don't want you to misunderstand. Because when some judge gives you ten without parole then you're not going to come back and complain that I didn't give your attorney time to prepare this case. So, you're going to have to represent yourself today. Your attorney is not going to be representing you. You're going to have to waive your right to an attorney. Do you understand that?

[APPELLANT]: Yes sir.

[THE COURT]: And you understand that you could get up to twenty-five years in this case?

[APPELLANT]: Yes sir.

Defense counsel then asked that his appearance be struck and handed appellant a copy of the mandatory penalty notice and the written statement of the charges. The court struck the appearance of defense counsel and scheduled the case for trial later that afternoon.

Later that afternoon, the parties appeared for trial before a different judge. The State's Attorney informed the court that the State had filed a notice seeking "the statutory ten years, none of which can be suspended[,]" because appellant was a repeat offender. She advised further that appellant was mad

at his public defender because he "had never talked to him and was not prepared to go forward today[.]" Although the prosecutor "tr[ied] to explain to [appellant] that . . . it wasn't [his attorney's] fault because he didn't have the paperwork in order to prepare," appellant "did say that he wanted to go forward today without an attorney." The trial court asked appellant whether this account was accurate. Appellant responded that he had done legal research and "figure[d] it doesn't take a paid lawyer . . . to come in and prove myself innocent."

The court then reviewed the charges against appellant:

THE COURT: Mr. Brye, you have been charged in this case, styled State of Maryland versus Marvie Edward Brye, with first degree assault, a handgun violation, two counts of a handgun violation, and common law false imprisonment. Now, *first degree assault carries a possible jail term of 25 years in jail. Second degree assault is a lesser included offense of that. If you are convicted of second degree assault, you can be incarcerated up to ten years. You can be fined $2500.* False imprisonment is a charge that doesn't carry a limit with regard to the amount of jail time you can get if you are found guilty. It's a common law offense. It's as long as you are sentenced to a period of incarceration that does not offend the cruel and unusual punishment provision in the Constitution. It's a legal sentence. There's no legal cap you can get on false imprisonment. *What is the maximum on handgun violation?*

[PROSECUTOR]: *Five years without possibility of parole.*

THE COURT: Two counts of that?

[PROSECUTOR]: That's correct.

THE COURT: *The handgun charges each carry [ ] a five-year jail term without the possibility of parole.* That's what you are charged with. It's important for us to have an understanding reflected on the record of your having an understanding [of] what you are charged with. (Emphasis added.)

For more than ten pages of written transcript, the court then informed appellant in detail about the advantages of having an attorney, and that appellant would "continue to have the opportunity to ask for [the] postponement" until "we start putting jurors up here to commence the trial." Appellant acknowledged these explanations, but twice declined the court's offers to postpone in order to allow him to "reapply to the Public Defender's Office or, otherwise, retain the services of a lawyer." Instead, appellant insisted on going to trial, even after the court again warned repeatedly that, "in about ten minutes you are going to lose your right to ask for a postponement to get an attorney" and that "[i]t is a big choice that you have made here today to give up your rights under the Sixth Amendment to have an attorney."

The parties then discussed the State's notice seeking a mandatory ten years, none of which could be suspended, for first degree assault, due to appellant's alleged status as a repeat offender. For a final time, the court asked appellant, "[D]o you still wish to go forward representing yourself and giving up the right to ask for a postponement of this case to get an attorney, which postponement will be granted?" Appellant twice affirmed that he wanted to go to trial without an attorney. The court ruled, "I'm satisfied that [appellant] has freely, knowingly, voluntarily, intelligently waived his right to counsel and he's made an informed and knowing and voluntary decision to give up his right to an attorney. I am satisfied that he wishes to represent himself in this case."

Appellant then asked for dismissal of the charges, stating: "I wasn't there at the time." The court denied the motion. The court and the parties discussed the number of peremptory challenges each side was permitted and what witnesses appellant intended to call. Appellant asked if he could ask a question concerning the charges and the following colloquy occurred:

> [APPELLANT]: I want to make it clear, I am going to trial for false imprisonment, unlawful use of a handgun and in the commission of a felony or crime or something, but they

have me charged false imprisonment, first degree assault, second degree assault, armed robbery.

THE COURT: The indictment that was filed which was served on your attorney before today states that you are charged with one count of, I already went through this with you this morning, one count of first degree assault, one count of handgun violation, a second count of the handgun violation and fourth count in the indictment is for false imprisonment. *He's also charged with possession of marijuanashell [sic] that's correct.*

THE COURT: *Count Five is possession of marijuana[.]* [O]ne count of first degree assault, maximum sentence 20 years; *second count handgun violation, maximum sentence is five years; third count, handgun violation, five years;* fourth count, false imprisonment, no limit on the amount of sentence there; fifth count, *possession of marijuana, if convicted of that, you can be incarcerated up to one year* under the circumstances.

Do you have any questions about any of that?

[APPELLANT]: Just to be [clear], I am being charged with assault one, handgun, handgun violation in one and handgun violation in two countshell [sic] one charge is use of a handgun in the commission of a felony, the other is use of a handgun in the commission of a crime of violence. The State will only be proceeding, should we get that far, the State will only be proceeding on one of those counts, the crime of violence, count number two, but it's obviously not appropriate at this time.

THE COURT: Do you have any questions about what you are charged with?

[APPELLANT]: No sir. (Emphasis added.)

The *venire* panel was then called into the courtroom.

At the close of the State's case, the State *nol prossed* the charges of using a handgun in the commission of a felony and marijuana possession. The jury acquitted appellant of first degree assault, false imprisonment, and using a handgun in the commission of a crime of violence. Appellant was ulti-

mately convicted on one count of second degree assault, for which he was sentenced to ten years imprisonment.

## DISCUSSION

## I.

### Waiver Of Counsel

The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, and by Article 21 of the Maryland Declaration of Rights. *See Knox v. State,* 404 Md. 76, 86, 945 A.2d 638 (2008). This right includes the right to be represented by counsel, as well as the corresponding right to proceed without the assistance of counsel. *See Gregg v. State,* 377 Md. 515, 548, 833 A.2d 1040 (2003)(citing *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975)). Nevertheless, the Supreme Court has recognized that, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *see Muhammad v. State,* 177 Md.App. 188, 241, 934 A.2d 1059 (2007), *cert. denied,* 403 Md. 614, 943 A.2d 1245 (2008). Consequently, for a waiver of counsel to be effective, "the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citation omitted).

To implement and protect the constitutional right to counsel, the Court of Appeals adopted Md. Rule 4–215. *See Parren v. State,* 309 Md. 260, 281–82, 523 A.2d 597 (1987). This Rule establishes the procedure that a court must follow when a defendant expresses a desire to waive counsel and represent himself. It is designed to ensure that, before allowing the defendant to discharge his counsel, "the court must be satisfied that the defendant is informed of the risks of self-representation, and of the punishments which may be imposed." *Knox,* 404 Md. at 87, 945 A.2d 638.

Subsection (e) of the Rule provides in pertinent part that, "[i]f the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance." In turn, subsection (a) sets forth a list of required advisements:

(a) **First Appearance in Court Without Counsel.**—

At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, **the court shall:**

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) **Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.**

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel. (Emphasis added.)

These advisements "are 'mandatory and ... must be complied with, irrespective of the gravity of the crime charged, the type of plea entered, or the lack of an affirmative showing of prejudice to the accused,'" because the right to counsel is a fundamental right. *Broadwater v. State*, 401 Md. 175, 182, 931 A.2d 1098 (2007) (citation omitted). Thus, the Rule "'exists as a 'checklist' that a judge must complete before a defendant's waiver can be considered valid; as such, it mandates strict compliance.'" *Knox*, 404 Md. at 87, 945 A.2d 638 (quoting *Johnson v. State*, 355 Md. 420, 426, 735 A.2d 1003 (1999)).

In its most recent advisement case, the Court of Appeals held in *Knox* that a judge must inform a defendant of any mandatory penalties he faces as a subsequent offender,

"and that such notice is required before a court may find that a defendant waives the right to be represented by counsel." *Id.* at 78, 945 A.2d 638. The Court concluded that the language requiring advisement of " 'allowable penalties, including mandatory penalties, if any,' as stated in Rule 4–215[ (a)(3)], includes notice of subsequent offender penalties." *Id.* at 88, 945 A.2d 638. Acknowledging that the rule is ambiguous in that it fails to mention this type of specific sentence enhancement, the Court interpreted the provision in light of its purpose and practical application. *See id.* at 88–89, 945 A.2d 638.

> A defendant cannot have full understanding of the consequences of the waiver of counsel if the defendant is unaware of the more severe potential penalties because of prior convictions. . . .
>
> It is undisputed that the trial court never advised petitioner of the additional penalties he was exposed to as a result of his subsequent offender status prior to his waiver of counsel. Petitioner was faced with the possibility of twenty years incarceration, with a mandatory minimum of ten years, because of his status as a second-time offender, and he was sentenced to twenty years incarceration. Ten years were with parole limitations based on his subsequent offender status. . . .
>
> A valid waiver of counsel presumes that [the] defendant makes the decision "with eyes wide open." A defendant may not evaluate the risks of forgoing the assistance of counsel effectively without knowing that there is a mandatory minimum term of imprisonment attached to his potential conviction. The Circuit Court erred when it did not inform defendant of the penalties he was subject to as a result of his subsequent offender status.

*Id.* at 91–92, 945 A.2d 638.

Here, appellant argues that the trial court erred in allowing him to discharge his counsel without correctly advising him "of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any." In

particular, appellant complains that the court: (1) failed to provide any advisement regarding the possession of marijuana charge; (2) failed to correctly advise him of the possible mandatory minimum and enhanced penalties for the handgun charges; and (3) erroneously informed him that he "could get up to twenty-five years in this case[,]" which failed to account for the penalty enhancements that would have to be imposed if appellant were convicted of one of the predicate offenses he was facing. We review each argument in turn, keeping in mind that appellant was not convicted of either possession of marijuana or any handgun charge.

### Advisement Regarding The Marijuana Charge

■ Appellant asserts that he "never received any advisements regarding the possession of marijuana charge against him prior to finalizing his decision to waive his right to counsel." After the district court advised appellant of the original charges and penalties, the marijuana charge was added. Although the circuit court mentioned the marijuana charge at the arraignment hearing, it did not give the maximum penalty for possession. On the morning of trial, when appellant first raised the possibility of discharging his public defender, the court reviewed the pending charges and potential penalties. In doing so, however, the court excluded, apparently inadvertently, the marijuana charge from that list.[2] Nevertheless, appellant was given a written statement of the

---

2. On May 24, 2006, at appellant's arraignment, the circuit court advised appellant of the charges against him and the allowable penalties, including "possession of a handgun, one year or $1,000 or both." But appellant was not charged with possession of a handgun, because there is no such crime in Maryland. The handgun crime carrying the lowest penalty is wearing, carrying, or transporting a handgun, for which a first time offender may be sentenced to three years and $2,500, with a 30 day minimum. *See* Md.Code (2002, 2007 Cum.Supp.), section 4–203 of the Criminal Law Article (Crim.). In contrast, Crim. section 5–601 criminalizes possession of marijuana and provides for a sentence of not more than one year and/or a fine not to exceed more than $1,000. Assuming that the transcript is an accurate record of what the court actually said, it appears that, in advising appellant of the charges against him and the allowable penalties, the circuit court misspoke and meant to say possession of marijuana, not possession of a handgun.

charges and penalties before the court accepted his waiver of counsel. That afternoon, when appellant appeared *pro se* for trial, the court correctly advised appellant that he was facing, *inter alia,* a marijuana count that carried "up to one year and $1,000."

Thus, the record shows that, before appellant proceeded to trial without counsel, he had been advised, both in writing and twice orally, that he was facing a marijuana charge. Although the trial court initially misstated that appellant was facing one year for possession of "a handgun," this error was corrected when appellant appeared for trial later that afternoon. At that time, the court specifically advised appellant that he had been charged with marijuana possession, which carried a one-year maximum sentence. Thereafter, appellant repeatedly insisted on going to trial *pro se,* on that day. During trial, the State *nol prossed* the marijuana charge.

The Court of Appeals consistently has held that "Md. Rule 4–215 is a 'precise rubric' that mandates strict compliance in order for there to be an effective waiver of counsel by a criminal defendant." *Johnson,* 355 Md. at 446, 735 A.2d 1003. Failure to give the required advisements requires a new trial. *See Knox,* 404 Md. at 87, 945 A.2d 638.

Appellant cites no precedent, however, in which the "precise rubric" standard has required reversal on the basis of an inadequate Rule 4–215(a)(3) advisement regarding the allowable penalties on a charge that carried a shorter penalty than the separate charge on which the defendant was convicted and as to which he was properly advised. This case materially differs from *Johnson* and related cases, including *Knox,* which collectively hold that failure to strictly comply with the checklist of Rule 4–205(a) advisements requires reversal. In contrast to those cases, all of the allegedly omitted and incorrect penalty advisements in this instance pertain to charges with lesser penalties on which appellant was not convicted. *Cf., e.g., Knox,* 404 Md. at 89–91, 945 A.2d 638 (failure to advise defendant convicted on all charges that he faced mandatory minimum of ten years due to subsequent offender enhance-

ment); *Johnson,* 355 Md. at 450, 735 A.2d 1003 (1999)(incomplete and confusing advisements as to all Rule 4–215(a) advisements relating to burglary or theft charges of which defendant was convicted); *Moten v. State,* 339 Md. 407, 408–11, 663 A.2d 593 (1995)(failure to advise defendant about allowable penalties on the charges of which he was convicted); *Parren,* 309 Md. at 275–76, 523 A.2d 597 (same).[3]

We do not read these cases to mandate automatic reversal of a conviction on charges about which the *pro se* defendant has been fully and accurately advised, unless the record otherwise indicates that the defendant's decision to discharge counsel was affected by an erroneous advisement regarding a charge on which the defendant was not convicted. The premise underlying the *Johnson* line of cases is that it is impossible to determine what impact the omitted or incorrect information could have had on the defendant's decision to waive counsel, and therefore it is impossible to say that his conviction did not result from a violation of his right to counsel. *See Johnson,* 355 Md. at 455–61, 735 A.2d 1003 (recognizing that failure to properly advise was so intertwined with right to counsel that new trial was required); *Mitchell v. State,* 337 Md. 509, 518, 654 A.2d 1309 (1995)(same). In our view, an irrebuttable presumption that a mis-advisement tainted the defendant's

---

**3.** Similarly, cases in which the advisements were found to have been properly given also have featured defendants convicted on the charges for which the advisements were alleged to have been inadequate. *See, e.g., Broadwater v. State,* 401 Md. 175, 191, 931 A.2d 1098 (2007)(piecemeal advisements of defendant who was convicted on all charges); *Gregg v. State,* 377 Md. 515, 833 A.2d 1040 (2003)(piecemeal advisements of defendant who was convicted on sole charge against him). In contrast, the advisement errors warranting reversal in waiver by inaction cases have consisted of inadequate inquiries into the defendant's reason for appearing without counsel, an issue not present in this discharge of counsel context. *Cf., e.g., Mitchell v. State,* 337 Md. 509, 515, 654 A.2d 1309 (1995)(insufficient inquiry regarding reason for appearing without counsel); *Moore v. State,* 331 Md. 179, 185–86, 626 A.2d 968 (1993)(failure to allow defendant to explain reasons for appearing without counsel); *Leonard v. State,* 302 Md. 111, 125–26, 486 A.2d 163 (1985)(failure to conduct required inquiry into reasons for appearing without counsel and whether defendant wished to proceed *pro se* ); *Snead v. State,* 286 Md. 122, 131, 406 A.2d 98 (1979)(failure to determine whether defendant wanted to represent himself).

waiver decision is not appropriate in cases such as this, when the mistake or omission in the advisement pertains to charges carrying lesser penalties than the charge on which the defendant was properly advised and convicted.[4] In such circumstances, it is both possible and reasonable to consider whether, despite the proper advisements given with respect to the charge on which the defendant was convicted, mistakes in the advisement on other charges that did not result in conviction contributed to the defendant's decision to discharge his court-appointed attorney.

Here, it is undisputed that there was no error in the advisements relating to the second degree assault charge on which the jury convicted appellant, because the trial court correctly advised appellant that second degree assault is a lesser included offense of first degree assault, and that the maximum penalty for second degree assault is ten years and $2,500. *See* Md.Code (2002, 2007 Cum.Supp.), § 3–203 of the Criminal Law Article (Crim.). The court also informed appellant at the time he discharged counsel that he faced up to 25 years for first degree assault, with a mandatory minimum of ten-years without parole due to his alleged repeat offender status. After reviewing the record, we conclude that the marijuana misadvisement did not contribute to appellant's decision to represent himself, because any error in the advisements concerning the marijuana charge was corrected before trial began, and appellant thereafter affirmed on the record his decision to waive counsel.[5]

---

4. This case does not present the issue of whether reversal would be required under the precise rubric theory if the mistake in the advisements pertains to charges that carry a greater maximum penalty than the conviction on appeal.

5. We also note that, although appellant initially decided to discharge his court-appointed attorney after the court mistakenly advised him that he was facing one year for "handgun possession," a crime which does not exist, appellant made the waiver decision with knowledge that he could be sentenced to a separate one-year term for one of the charged crimes.

Given these circumstances, we conclude that appellant made a fully informed decision to represent himself on the assault charge on which he was convicted. Reversing appellant's conviction would simply reward appellant's *post hoc* regret about his considered choice to discharge counsel, without providing any additional protection for the right to counsel. We do not read the case law so broadly as to require such an unfortunate result.

### Advisements Regarding The Handgun Charges

■ Under Crim. section 4–204, the maximum penalty for use of a handgun in either a crime of violence or a felony is twenty years.[6] But these crimes also carry a mandatory minimum of five years without the possibility of parole. In addition, when the sentence is for a repeat offense, it must be consecutive to the sentence given for the underlying crime of violence or felony. Appellant complains that he was never advised of the five-year mandatory minimum penalty on the handgun charges, or of the mandatory consecutive sentencing enhancement.

Once again, however, appellant was not convicted of either handgun charge on which he bases his Rule 4–215(a)(3) challenge. During trial, the State *nol prossed* the charge of using a handgun in the commission of a felony. The jury acquitted appellant of using a handgun in the commission of a crime of violence.

----

**6.** Crim. section 4–204, prohibiting the use of a handgun in the commission of a defined crime of violence or any felony, provides:

(b)(1)(i) A person who violates this section is guilty of a misdemeanor and, **in addition to any other penalty imposed for the crime of violence or felony, shall be sentenced to imprisonment for not less than 5 years and not exceeding 20 years.**

(ii) **The court may not impose less than the minimum sentence of 5 years** and, except as otherwise provided in § 4–305 of the Correctional Services Article, the person is not eligible for parole in less than 5 years.

(2) **For each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony.** (Emphasis added.)

For the reasons discussed above, we shall not conclusively presume that appellant's assault conviction must be vacated if the errors in the advisements related only to charges the handgun offenses on which appellant was not convicted. Instead, we examine the record to determine whether errors in the handgun advisements contributed to appellant's decision to discharge his attorney.

This case differs from *Knox,* because the error warranting reversal in that case was failure to advise the defendant that the crime he had been convicted of carried a mandatory minimum sentence. *See Knox,* 404 Md. at 91, 945 A.2d 638. In contrast to Knox, appellant was not convicted of the handgun crime and therefore did not receive the mandatory minimum sentence or a consecutive sentence. *See id.* at 80, 945 A.2d 638.

We are not persuaded that either of the alleged omissions merit reversal of appellant's assault conviction. Before he waived counsel on the morning of his scheduled trial date, appellant was properly advised that he faced 20 or more years on the handgun charges.[7] In reviewing the charges when appellant appeared *pro se* for trial later that afternoon, the trial court correctly advised appellant that the two "[h]andgun charges each carry[ ] a five-year jail term without the possibility of parole." Moreover, there is no explicit requirement that the court must advise a defendant that he faces consecutive sentences if he is convicted of a certain combination of the charges against him—a possibility that frequently exists when the defendant has been charged with multiple crimes. In these circumstances, appellant's decision to discharge counsel was made " 'with eyes wide open.' " *See id.* at 91, 945 A.2d 638.

---

7. We conclude that appellant's decision to waive counsel could not have been prompted by the trial court's erroneous statement at the arraignment that "use of a handgun in a crime of violence ... carries twenty-five years without parole[.]" Although the maximum penalty for that crime is only 20 years, the court simultaneously advised appellant that the maximum penalty for using a handgun in the commission of a felony carried 20 years. Moreover, a defendant's mistaken belief that he faces a *longer* sentence than the sentence he actually does face would increase, rather than decrease, his reasons for retaining counsel.

### "Up To Twenty–Five Years"

██ Appellant's final argument is that the trial court mistakenly advised him that he was facing "up to twenty-five years," when, in fact, he was facing a longer term of confinement if convicted on all charges.[8] The court was not required to "total up" the potential sentences as part of its advisements. When the court reviewed the list of charges and potential penalties, appellant was advised that he faced a series of sentences that added up to more than 25 years total. Moreover, the reference to 25 years appears to have been related only to the longest maximum sentence (*i.e.*, the first degree assault charge), rather than to the total of all maximum sentences. When read in context, the challenged statement was made in order to impress upon appellant that the charges against him were serious. Appellant was correctly and timely advised that he was facing ten years for the second degree assault charge on which he was convicted, and that he was facing 25 years for first degree assault, with a mandatory ten-year minimum as a repeat offender enhancement. In these circumstances, the trial court did not err in finding that the appellant waived his right to counsel "with eyes wide open."

## II.

### Evidence

 Appellant alternatively argues that his conviction should be vacated because the trial court erred in admitting irrelevant and prejudicial evidence. Specifically, appellant complains that the court should have excluded "several detailed, inflammatory accounts of" what happened, including what was said, before he arrived at Ms. Lomax's home.[9]

---

8. If appellant had been convicted on all charges, he could have been sentenced to a total of 49 years. This is the sum of maximum penalties and enhancements, as follows: 25 yrs (assault max, with 10 yr min mandatory enhancement) + up to 20 yrs (handgun max, w/ min of 5 w/o parole and this sentence consecutive to assault sentence) + up to 3 yrs (false imprisonment max) + 1 yr (marijuana max) = 49 yrs.

9. Appellant refers to testimony by Officer Crystal Young, who responded to the 911 call regarding "[a] subject with a gun[.]" Young testified

**126**

The State counters that (1) appellant failed to preserve this objection to this testimony; (2) "the evidence was relevant because it provided context for Brye's actions and . . . linked Jones's actions to Brye's arrival"; and (3) any error was harmless in light of the testimony that Brye offered to kill the victim and physically assaulted the victim.

We agree that appellant failed to preserve this issue for appellate review, because he did not object to other testimony giving the same account he now challenges. *See* Md. Rule 4–323(a)(objection is generally waived unless "made at the time the evidence is offered"); *see, e.g., von Lusch v. State*, 279 Md. 255, 263, 368 A.2d 468 (1977)(when party asserts grounds for objection, he waives all other grounds); *Peisner v. State*, 236 Md. 137, 146, 202 A.2d 585 (1964)("the error, if any, in admitting evidence was rendered harmless by the introduction of competent evidence proving the same facts, or by the appellant's failure to object when evidence covering the same matter was subsequently introduced"), *cert. denied,* 379 U.S. 1001, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965). Even assuming

---

that when she arrived, Dr. Lane complained that he had been assaulted. Young proceeded to recount what Lane told her:

[PROSECUTOR]: What did Mr. Lane tell you?

[YOUNG]: Mr. Lane told me that he had just come from his girlfriend's house, he had identified his girlfriend as Terri Lomax. He lived on Holder Avenue just down the street. He said he went over there because she had called him to come over and meet her daughter because her ex-boyfriend was there with her daughter. Her ex-boyfriend was identified as Star, which is a nickname for Christopher Jones.

Mr. Lane said he . . . . was welcomed inside the home by Ms. Lomax and Christopher Jones. He introduced himself to Christopher Jones, sat on the couch, they had a very short conversation about what I do not know. At that time, victim Lane advised me that he was sitting on the couch and Christopher Jones was standing up facing him in the living room and pulled a silver handgun from his right front pocket, pointed it at the victim and told him he just walked into an ambush and he was going to kill him. Suspect Jones then said, quote[,] I got a 380 and I'll put two in your head right now. Suspect Jones asked victim Lane if he had any weapons.

[APPELLANT]: Objection, Your Honor. . . . This is concerning the suspect Jones. I am Marvie Brye. Could we get to me? Everything is about Mr. Jones. I am here for my life. Get to my part.

THE COURT: The objection is overruled. Proceed.

*arguendo* that appellant objected to Officer Crystal Young's testimony on the same grounds he now asserts on appeal, nevertheless the record shows that the challenged information also came in without objection from the two victim witnesses. Craig Lane testified without objection about Jones's actions and statements before appellant arrived. Similarly, Terri Lomax, Lane's girlfriend, gave her account of Jones's statements and actions prior to appellant's arrival. Given this testimony regarding events before appellant was on the scene, as well as Lane's and Lomax's accounts of appellant's offer to shoot Lane and his assault of Lane, admission of the challenged testimony did not prejudice appellant.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**