980 A.2d 435

**Marvie Edward BRYE**

v.

**STATE of Maryland.**

**No. 127 Sept.Term, 2008.**

Court of Appeals of Maryland.

Sept. 18, 2009.

624

Kellie M. Black, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for Petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JOHN C. ELDRIDGE (Retired, specially assigned) and IRMA S. RAKER, (Retired, specially assigned), JJ.

HARRELL, Judge.

This Court, in some recent cases, exhibited a degree of tolerance when examining the sufficiency of required advisements to a defendant before acceptance of a waiver of counsel where the totality of advisements was rendered accurately by a series of judges of the same tier of court in a case. *See, e.g., Broadwater v. State*, 401 Md. 175, 931 A.2d 1098 (2007); *Gregg v. State*, 377 Md. 515, 833 A.2d 1040 (2003). The present case exceeds that tolerance.

Maryland Rule 4–215(a)(3) provides that a defendant in a criminal case wishing to waive his or her right to counsel first be advised "of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any." We are required here to consider whether a circuit court committed reversible error by accepting a defendant's waiver of counsel where, in the course of the defendant's pre-trial appearances, the judges before whom he appeared gave conflicting and inaccurate advisements of the penalties for some of the charges then pending against the defendant, but, on the only charge for which the defendant was convicted eventually, a correct advisement was given. In a reported opinion, the Court of Special Appeals concluded

that the incorrect advisements did not warrant reversal. *Brye v. State,* 181 Md.App. 105, 955 A.2d 821 (2008). The intermediate appellate court concluded that, because the defendant effectively was advised correctly of the maximum potential penalty he faced for the only crime for which he was convicted, any incorrect advisements he received regarding other charges that did not result in convictions did not warrant reversal. We disagree. Accordingly, we shall reverse the judgment of the intermediate appellate court.

## I. Facts

On the afternoon of 27 March 2006, Petitioner Marvie Brye's ("Brye") cousin, Christopher Jones, Terri Lomax (the mother of Jones's eight-year-old daughter), and Craig Lane (Lomax's current boyfriend) met at Lomax's residence in Baltimore County.[1] Although the meeting between Jones, Lomax and Lane began cordially enough, an argument developed soon. At some point during the heated exchanges, Jones produced a handgun and threatened, and eventually assaulted, Lane. While holding Lane at gunpoint, Jones called Brye and demanded that he join the group at the home. Brye complied.

As an act of contrition for not arriving sooner, Brye, reaching for Jones's gun, offered to shoot Lane for Jones. In lieu of shooting him, however, Brye struck Lane in the face and upper body with his fists. A general melee ensued between the three men, during which Lane managed to escape and call the police.[2] The police responded and arrested Brye a couple of blocks from Lomax's residence.

On 28 March 2006, the day after the altercation, a statement of charges was filed against Brye in the District Court of Maryland, sitting in Baltimore County, charging him with two counts of false imprisonment, two counts of first degree assault, and one count each of second degree assault and at-

---

1. The facts are related in a light most favorable to the State's evidence adduced at trial.

2. Petitioner maintained at trial that he did not have anything to do with the fight.

tempted armed robbery. Subsequently, the State's Attorney for Baltimore County filed a criminal information against Brye in the Circuit Court for Baltimore County, superseding the statement of charges filed in the District Court. The information charged Brye with first degree assault, use of a handgun in the commission of a crime of violence, use of a handgun in the commission of a felony, false imprisonment, and possession of marijuana arising from the 27 March 2006 incident.

On 24 May 2006, Brye appeared for arraignment in the Circuit Court. The arraigning judge informed Brye: "This is not the trial of your case; it's an arraignment. I'm supposed to make you understand what you're charged with and the maximum penalties and advise you with regard to your right to an attorney." The court advised him as follows:

> You're charged with first-degree assault, which carries up to twenty-five years; *use of a handgun in a felony, carries twenty years with a mandatory minimum of five without parole; use of a handgun in a crime of violence, and that carries twenty-five years without parole;* false imprisonment which carries up to three years; possession of a handgun, one year or $1,000 or both.

(emphasis added).

A Public Defender entered an appearance on Brye's behalf on 30 June 2006. During the morning of 31 July 2006, the scheduled trial date, defense counsel requested a postponement from the administrative judge. Counsel stated as grounds that he had only just received notice that the State was seeking an enhanced penalty on the first degree assault charge because Brye was alleged to be a repeat offender. He also noted that he had not received yet the State's response to defense requests for discovery. Brye's counsel explained, however, that his client objected to the request for postponement. Initially, the court granted the request for a postponement, over Brye's objection, expressing as part of its reasoning that it wished to foreclose Brye claiming in a post-conviction proceeding that he "wasn't properly represented."

The administrative judge inquired of the parties about the mandatory penalty for the flagship charge, first degree assault. Both sides agreed that the mandatory incarceration penalty for first degree assault for a repeat offender was "ten [years] without parole." The court informed Brye that he was facing ten years without the possibility of parole, and that the State only notified his defense counsel "this past Friday" about the enhanced penalty being sought. The judge explained to Brye that his counsel was "asking for a postponement so he can prepare a defense for you" and that the court "assume[d] you don't want to go forward and take the ten without parole, do you?" Brye responded that he was prepared for trial because he had been "incarcerated since March" and was frustrated because he was "not involved in this situation [the incident on 27 March 2006]." The court replied, "Sir, the State doesn't agree with that. The State says you're guilty and that they want ten without parole. So, I'd suggest you let [defense counsel] look into what your statement is and what's going on."

While the court and counsel discussed re-setting the case for trial in 30 to 60 days, Brye interrupted repeatedly asking whether he had to accept the postponement. The judge informed Brye that he did not, and that he could represent himself if he wished. When the State informed the court that it was prepared to proceed to trial, Brye again noted his readiness, stating that if his attorney was not ready now, then he would "never be ready." The court reiterated to Brye that his defense counsel "just got the notice on Friday that you're facing ten without parole." The following exchange occurred then:

[PETITIONER]: Well, I didn't do nothing your honor. So, I figure the court will understand the situation.

[THE COURT]: Well, you see, I don't want you to misunderstand. Because when some judge gives you ten without parole then you're not going to come back and complain that I didn't give your attorney time to prepare this case. So, you're going to have to represent yourself today. Your attorney is not going to be representing you. You're going

to have to waive your right to an attorney. Do you understand that?

[PETITIONER]: Yes sir.

[THE COURT]: And you understand that you could get *up to twenty-five years* in this case?

[PETITIONER]: Yes sir.

(emphasis added). Defense counsel asked that his appearance be struck and handed Brye a copy of the mandatory penalty notice and the criminal information stating the charges. The administrative judge struck the appearance of defense counsel and directed the case be tried later that afternoon.

That afternoon, the parties appeared for trial before a different judge. The State's Attorney informed the trial court that the State had filed a notice seeking "the statutory ten years, none of which can be suspended" due to Brye's status as a repeat offender. A colloquy ensued between the State's Attorney and the court concerning the reasons why Brye expressed a desire to discharge his defense counsel, including Brye's frustration that his attorney was not prepared to try the case that day. Turning to Brye, the trial judge asked whether the State's account was accurate, to which Brye responded that it was his wish that he proceed to trial without defense counsel.

The court then reviewed the charges against him:

[THE COURT]: Mr. Brye, you have been charged in this case, styled State of Maryland versus Marvie Edward Brye, with first degree assault, a handgun violation, two counts of a handgun violation, and common law false imprisonment. Now, first degree assault *carries a possible jail term of 25 years in jail.* Second degree assault is a lesser included offense of that. *If you are convicted of second degree assault, you can be incarcerated up to ten years. You can be fined $2500.* False imprisonment is a charge that doesn't carry a limit with regard to the amount of jail time you can get if you are found guilty. It's a common law offense. It's *as long as you are sentenced to a period of incarceration that does not offend the cruel and unusual punishment*

*provision in the Constitution.* It's a legal sentence. There's no legal cap you can get on false imprisonment. *What is the maximum on handgun violation?*

[STATE'S ATTORNEY]: *Five years without possibility of parole.*

[THE COURT]: Two counts of that?

[STATE'S ATTORNEY]: That's correct.

[THE COURT]: *The handgun charges each carry [ ] a five-year jail term without the possibility of parole.* That's what you are charged with. It's important for us to have an understanding reflected on the record of your having an understanding [of] what you are charged with.

(emphasis added). The trial judge reiterated to Brye, in detail, the advantages of having an attorney, and that Brye would "continue to have the opportunity to ask for [a] post-ponement" until "we start putting jurors up here to commence the trial." Brye acknowledged the court's explanations, but declined the offer of a postponement. After the parties again discussed the State's notice seeking a mandatory ten years for a conviction of first degree assault, during which it was repeated that no part of the ten years could be suspended if imposed, the court asked Brye for a final time if he wished to proceed to trial representing himself and forfeit his opportuni-ty to seek a postponement in order to secure counsel. Brye responded in the affirmative. The judge responded:

Okay. I'm satisfied that [Brye] has freely, knowingly, voluntarily, intelligently waived his right to counsel and he's made an informed and knowing and voluntary decision to give up his right to an attorney. I am satisfied that he wishes to represent himself in this case.

Brye then moved for dismissal of all charges, declaring "I wasn't there [at Lomax's residence] at the time." The court denied his motion. The court and the parties discussed the number of peremptory challenges each side was permitted and which witnesses Brye intended to call. When Brye asked for a clarification of the charges against him, the following ex-change ensued:

[PETITIONER]: I want to make it clear, I am going to trial for false imprisonment, unlawful use of a handgun and in the commission of a felony or crime or something, but they have me charged false imprisonment, first degree assault, second degree assault, armed robbery.

[THE COURT]: The indictment that was filed which was served on your attorney before today states that you are charged with one count of, I already went through this with you this morning, one count of first degree assault, one count of handgun violation, a second count of the handgun violation and fourth count in the indictment is for false imprisonment. He's also charged with possession of marijuana[ ] that's correct.

[ ]Count Five is possession of marijuana[.] [O]ne count of first degree assault, maximum sentence 20 years; second count handgun violation, *maximum sentence is five years;* third count, handgun violation, *five years;* fourth count, false imprisonment, no limit on the amount of sentence there; fifth count, possession of marijuana, if convicted of that, you can be incarcerated up to one year under the circumstances.

Do you have any questions about any of that?

[PETITIONER]: Just to be [clear], I am being charged with assault one, handgun, handgun violation in one and handgun violation in two counts[ ] one charge is use of a handgun in the commission of a felony, the other is use of a handgun in the commission of a crime of violence. The State will only be proceeding, should we get that far, the State will only be proceeding on one of those counts, the crime of violence, count number two, but it's obviously not appropriate at this time.

[THE COURT]: Do you have any questions about what you are charged with?

[PETITIONER]: No sir.

(emphasis added). The *venire* then was called into the courtroom and a jury impaneled.

At the close of its case-in-chief, the State *nol prossed* the charges of using a handgun in the commission of a felony and marijuana possession. At the close of all the evidence, the jury acquitted Brye of first-degree assault, false imprisonment, and use of a handgun in the commission of a crime of violence. He was convicted on one count of second-degree assault,[3] and sentenced to ten years imprisonment.

Brye (now with counsel) filed an appeal to the Court of Special Appeals, arguing two grounds of reversible error. He asserted that the trial court erred by failing to advise him of the nature of the charges and the allowable penalties, as required by Maryland Rule 4–215(a)(3). He also asserted that the trial court erred in admitting irrelevant and prejudicial evidence. The Court of Special Appeals affirmed. Of relevance to the issue before us, the intermediate appellate court concluded that any erroneous advisements Brye received concerning the penalty for the handgun charges did not warrant reversal because those erroneous or conflicting advisements related only to charges for which Brye was not convicted, and that Brye made a knowing and intelligent waiver of counsel as to the only charge for which he was convicted, second-degree assault, having been advised correctly pretrial of the maximum possible penalty for that charge. *Brye*, 181 Md.App. at 124, 955 A.2d at 831–32.

We issued a writ of certiorari upon Brye's petition.[4] *Brye v. State*, 406 Md. 743, 962 A.2d 370 (2008).

---

**3.** Lane's testimony at trial revealed that Brye reached for Jones's gun, but the gun was withheld by Jones. Instead, Brye punched Lane in the face multiple times. The jury was instructed by the trial judge, without objection, to consider both first degree assault and the lesser included offense of second degree assault.

**4.** His successful petition for writ of certiorari presented the following issue:

Did the circuit court commit reversible error by accepting Petitioner's waiver of counsel after providing inconsistent and inaccurate advisements regarding the maximum penalties possible under two of the charges against him; failing to advise him of the mandatory penalties carried by those two charges; and failing to provide any advisements regarding another charge?

## II. ANALYSIS

■ The right of a defendant in a criminal case to counsel is guaranteed by the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, and by Article 21 of the Maryland Declaration of Rights. *Broadwater*, 401 Md. at 179, 931 A.2d at 1100. The right to counsel seeks to protect a defendant from the complexities of the legal system and his or her lack of understanding of the law. *Powell v. Alabama*, 287 U.S. 45, 68–72, 53 S.Ct. 55, 77 L.Ed. 158 (1932).[5]

■ Defendants, however, have the corresponding right to proceed without the assistance of counsel. *See Gregg*, 377 Md. at 548, 833 A.2d at 1059–60 (citing *Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The Supreme Court has recognized that, in such circumstances, "[w]hen an accused manages his own defense, he relinquishes ... many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. Therefore, for a defendant's waiver of counsel to be effective, "the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* (citation omitted). The accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with

---

5. The *Powell* Court explained:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he had a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he may be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Powell*, 287 U.S. at 69, 53 S.Ct. 55.

eyes open.' " *Id.* (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

■ As part of the implementation and protection of a defendant's fundamental right to counsel, we adopted Maryland Rule 4–215 for purposes of, *inter alia,* providing judges with a roadmap of how to conduct the required waiver inquiry that will safeguard the defendant's constitutional right to counsel and provide the defendant with the essential information necessary to make a decision concerning self-representation.[6] *See Broadwater,* 401 Md. at 180–81, 931 A.2d at 1100–

---

6. Maryland Rule 4-215, in its entirety, provides:

(a) First appearance in court without counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

(b) Express waiver of counsel. If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

(c) Waiver by inaction—District Court. In the District Court, if the defendant appears on the date set for trial without counsel and indicates a desire to have counsel, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time, comply with section (a) of this Rule, if the record does not show prior compliance, and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the trial only if (1) the defendant received a copy of the charging document containing the notice as to the right to counsel and (2) the defendant either (A) is charged with an offense that is not punishable by a fine exceeding five hundred dollars or by imprisonment, or (B) appeared before a judicial officer of the District Court pursuant to Rule 4–213(a) or before the court pursuant to section (a) of this Rule and was given the required advice.

(d) Waiver by inaction—Circuit Court. If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

(e) Discharge of counsel—Waiver. If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

01. Subsection (a)(3) exists to ensure that a defendant is made aware of all pending charges and associated penalties. The court must comply with subsection (a)(3) when the accused indicates expressly a desire to waive counsel, *see* Md. Rule 4–215(b) ("If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry."), or when the accused seeks to discharge an attorney whose appearance has been entered on his or her behalf. *See* Md. Rule 4–215(e) ("If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance."). Compliance with the disclosure requirements of Md. Rule 4–215 is necessary to ensure that the defendant knowingly and intelligently waives the right to counsel. *See Fowlkes v. State*, 311 Md. 586, 609, 536 A.2d 1149, 1161 (1988).

 The court must comply strictly with the requirements of Rule 4–215(a) before accepting a defendant's waiver of counsel. *See Broadwater*, 401 Md. at 182, 931 A.2d at 1102 ("Strict, not substantial, compliance with the advisement and inquiry terms of the Rule is required in order to support a valid waiver." (citing *Moten v. State*, 339 Md. 407, 411, 663 A.2d 593, 596 (1995))). We held in *Broadwater* that Rule 4–215(a) advisements may be given properly to a defendant by different judges of the same court on a piecemeal basis; however, a waiver nonetheless may be found invalid if a reviewing court is persuaded that the defendant could not have made an informed decision due to substantial confusion fostered by a serialized approach to rendering the required advisements. *Broadwater*, 401 Md. at 201–02, 931 A.2d at 1113–14. *Broadwater* did not relax, in any way, the mandatory nature of the required advisements of Rule 4–215; failure to comply strictly with Rule 4–215 constitutes reversible error. *See Knox v. State*, 404 Md. 76, 87, 945 A.2d 638, 645 (2008) ("[Rule 4–215] mandates strict compliance.... Failure to comply with the Rule constitutes reversible error.") (internal citations omitted).

### A. Incorrect and Conflicting Rule 4–215(a)(3) Advisements in the Present Case

Brye contends that his accepted waiver was invalid due to incorrect and conflicting advisements he received over the course of his appearances before the Circuit Court. The Circuit Court advised Brye incorrectly, before accepting finally Brye's intention to proceed to trial without counsel, of the possible penalties he was facing for the two handgun charges, underestimating the range of the potential penalty for each charge by, minimally, fifteen years.[7] For the reasons that follow, we conclude that the advisements Brye received were an insufficient predicate under Maryland Rule 4–215 to sustain the court's acceptance of Brye's waiver of counsel.

### 1. Handgun Charges

█ The Circuit Court failed to comply strictly with Rule 4–215(a)(3) when giving Brye conflicting and incorrect advisements of the penalties he faced for each of the handgun charges. The State charged Brye with use of a handgun in a crime of violence and use of a handgun in the commission of a felony, both of which are violations of Maryland Code (2002 & Supp.2008), Criminal Law Article § 4–204(a).[8] Section 4–204(b) states that the maximum possible penalty for a violation is twenty years, with a mandatory minimum of five years without the possibility of parole.[9]

---

7. The relevant statutory penalty provided in § 4–204(b) of Md.Code, (2002 & Supp.2008) Criminal Law Art., also provides a mandatory consecutive-sentencing provision in subsection (b)(2). *See infra* note 9.

8. Section 4–204(a) of the Criminal Law Article provides:

 (a) *Prohibited.*—A person may not use an antique firearm capable of being concealed on the person or any handgun in the commission of a crime of violence, as defined in Article 27, § 441 of the Code, or any felony, whether the antique firearm or handgun is operable or inoperable at the time of the crime.

9. Section 4–204(b) of the Criminal Law Article provides:

 (a) *Penalty.*—(1)(i) A person who violates this section is guilty of a misdemeanor and, in addition to any other penalty imposed for the

On 24 May 2006, at the arraignment hearing held over two months before trial, the court gave Brye (before trial counsel entered his appearance) the correct advisement for one handgun charge and an incorrect advisement for the other. The judge overstated the possible penalty for use of a handgun in a crime of violence as "twenty-five years without parole."

On 31 July 2006, on the morning of trial, when Brye first indicated his wish to discharge counsel, the, administrative judge gave Brye conflicting and incorrect advice. The judge informed Brye that he was "facing ten years without the possibility of parole" and that Brye "could get up to twenty-five years in this case[.]"[10] This advisement grossly understated the potential penalties Brye faced. Brye could have received twenty-five years for the first degree assault alone.[11] He was exposed to an additional twenty years if convicted of a handgun violation. There is no indication in the record that defense counsel brought this error to his client's or the court's attention before exiting the case.

Later that day, the trial judge advised Brye incorrectly that the maximum penalty for each of the handgun charges was five years without the possibility of parole.[12] Five years

---

 crime of violence or felony, shall be sentenced to imprisonment for not less than 5 years and not exceeding 20 years.

 (ii) The court may not impose less than the minimum sentence of 5 years and, except as otherwise provided in § 4–305 of the Correctional Services Article, the person is not eligible for parole in less than 5 years.

 (2) For each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony.

**10.** The judge was referring here only to the first-degree assault charge when advising Brye because, in context, that was the charge being discussed at that time. The incorrect advisement, however, was not corrected subsequently by the court prior to the court's acceptance of Brye's waiver of counsel.

**11.** Section 3–202 of the Criminal Law Article provides that "[a] person who violates this section is guilty of the felony of assault in the first degree and on conviction is subject to imprisonment not exceeding 25 years."

**12.** The State argues that the trial judge's severe understatement of the potential penalties for the handgun charges is immaterial. The State

without the possibility of parole was the minimum sentence Brye could have received for a handgun violation. If he had been convicted of the handgun violation, Brye could have faced a maximum sentence of up to twenty years.

Sifting through this litany of confusing and conflicting advisements, we have little confidence that Brye had a clear understanding of the nature of the charges, and their allowable penalties, when he waived his right to counsel. At his first appearance in the Circuit Court, over two months before trial, Brye was advised that he faced twenty years for one of the handgun violations, and twenty-five years for the other. At his next appearance, he was advised that he faced up to twenty-five years "in this case." Finally, immediately before his trial commenced, Brye was advised by the trial judge that the maximum sentence he faced for a handgun violation was five years. While a layperson may be expected to comprehend accurate advisements given cumulatively at separate appearances, we draw the line at expecting a layperson to be able to discern which is the correct advisement from a series of conflicting and often incorrect advisements from different

---

avers that, because Brye was advised correctly of the potential penalties at some point during his earlier appearances, and because Brye indicated his intention to waive his right to counsel prior to trial, the proper focus for our analysis of Rule 4–215(a)(3) compliance should be on the correct advisements made during Brye's earlier appearances before appearing before the judge who tried the case. We disagree.

Rule 4–215(e) provides that, for those situations in which the "defendant requests permission to discharge an attorney whose appearance has been entered, ... [i]f the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance." The State's position is undermined by the fact that not all of subsections (a)(1)-(4) had been complied with until after the exchange between Brye and the trial judge immediately prior to the trial, at which time the trial judge advised Brye:

> The handgun charges each carry [ ] a five-year jail term without the possibility of parole. That's what you are charged with. *It's important for us to have an understanding reflected on the record of your having an understanding [of] what you are charged with.*

(emphasis added). It was not until after this incorrect advisement of the potential penalties for the handgun charges that the trial judge accepted Brye's waiver of counsel finally.

judges. On this record, Brye is not deemed by us as having "effectively waive[d] counsel" because these advisements did not give him a valid and clear basis from which " 'apprehension . . . of the range of allowable penalties' " may be inferred. *Knox,* 404 Md. at 91, 945 A.2d at 647 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948)).

## 2. Subsequent Offender Enhancement and Possession of Marijuana

Because Brye will receive a new trial on the basis of the conflicting and incorrect advisements regarding the handgun charges, we need not address his argument that the Circuit Court erred by not advising him that, if he was a subsequent offender, he faced consecutive sentences on the handgun charges.[13] Similarly, we need not address Brye's argument that he was not advised properly regarding the possession of marijuana charge.

## B. Violation of Rule 4–215(a)(3) Requires Reversal

■ We consistently have held that, when a failure to comply with subsection (a)(3) of Rule 4–215 is found, reversible error is the result. *See Moten,* 339 Md. at 411–12, 663 A.2d at 596 (reversing conviction because trial court did not inform defendant of allowable penalties); *Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987) (holding that failure to comply with subsection (a)(3) renders waiver ineffective and, thus, the trial court erred in accepting the waiver of the defendants as freely and voluntarily made); *see also Okon v. State,* 346 Md. 249, 249, 696 A.2d 441, 442 (1997) (reaffirming *Moten* and *Parren*).

The State contends that the errors made in the advisements regarding the handgun charges do not warrant reversal because Brye was given a correct advisement regarding the only charge for which he was convicted eventually. Brye was

---

13. The record does not permit us to resolve whether Brye would have been exposed to Criminal Law Article § 4-204(b)(2)'s consecutive sentence mandate as a subsequent offender.

convicted of second-degree assault and sentenced to ten years in prison.[14] The trial judge correctly informed Brye, prior to accepting his waiver of counsel, of the possible penalties for a second-degree assault conviction. Accordingly, the State argues, Brye made a knowing and intelligent decision to waive counsel as to the second-degree assault charge. The State also argues that any errors in the advisements given Brye do not warrant reversal because Brye was sentenced ultimately to a period of incarceration less than the collective maximum penalties of which he was warned previously. The State claims that our opinion in *Broadwater* supports a case-by-case determination of whether an erroneous (a)(3) advisement is prejudicial. *Broadwater*, 401 Md. at 202, 931 A.2d at 1113–14.

As was noted in *Parren*, the State's argument in this case, similarly made in *Parren*, "is not without a persuasive sheen." *Parren*, 309 Md. at 281, 523 A.2d at 607. That argument, however, ignores our holding in *Parren* and misconstrues *Broadwater*. In *Parren*, the defendants discharged their counsel at the beginning of their trial and chose to proceed representing themselves. *Id.* at 267, 523 A.2d at 600. The trial judge conducted a waiver inquiry, but did not inform the defendants of the possible penalties they faced if convicted. *Id.* at 276, 523 A.2d at 604–05. A jury convicted the defendants. They appealed. On appeal, the State argued that we should permit the convictions to stand because the "totality of the circumstances" indicated that the defendants' waiver was knowing and intelligent. *Id.* at 281, 523 A.2d at 607. We rejected the State's argument, holding that a court's failure to provide the 4–215(a)(3) advisement renders a "waiver[ ] of counsel ineffective" and requires reversal. *Id.* at 282, 523 A.2d at 608.

Our opinion in *Broadwater* did not disavow *Parren*. In *Broadwater*, the defendant received the correct 4–215(a) advisements over the course of multiple appearances in a circuit court, thus rendering his waiver of counsel effective. *Broad-*

---

**14.** *See supra* note 3.

*water*, 401 Md. at 206–07, 931 A.2d at 1116–17. *Broadwater* also recognized, however, that there nonetheless may arise situations in which a defendant's waiver is ineffective even though he or she receives all of the Rule 4–215(a) advisements in such a serial fashion. *Id.* at 202, 931 A.2d at 1113–14. The Court stated that confusion, evident from the record, caused by a serialized approach to advisements

> may be protected against in the course of a case-by-case analysis of the particular record in a case where waiver is found. If sufficient indicia persuade a trial or appellate court that a defendant's inaction was attributable, to a meaningful degree, to confusion on his or her part as to the right to counsel and the consequence of inaction because of the serialized rendition of the preliminary advisements, justice can be tailored in such a case.

*Id.* at 202, 931 A.2d at 1114. *Broadwater*'s reference to the safeguard of a case-by-case review may be triggered where a defendant receives all of the correct (a)(3) advisements, but maintains that the methodology and actuality of their delivery was so confusing as to persuade a reviewing court to doubt whether the subsequent waiver was knowingly and intelligently made. Thus, *Broadwater* did not disturb *Parren's* holding that a court's failure to give proper advisements requires reversal.

 In the present case, the problem with the court's advisements was not so much that they were given on a piecemeal basis, but that some of the advisements were incorrect and inconsistent. Incorrect advisements commingled with correct ones, rendered by a series of judges, cannot be ignored simply because a defendant is not convicted of the implicated charge or charges. Moreover, we reject the suggestion that the advisements Brye received do not warrant reversal because the only erroneous advisements he received related to charges for which he was not convicted. The analytical focus of a Rule 4–215 argument is at the point in the proceeding when the waiver is accepted (and relevant events leading up to that acceptance), not what happened at the trial. Quasi-harmless error analysis, as urged by the State, conflicts

directly with our clear mandate in *Moten* that "harmless error analysis is inapplicable to a violation of Maryland Rule 4–215(a)(3)." *Moten,* 339 Md. at 409, 663 A.2d at 595.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.**

Dissenting Opinion by MURPHY, Judge.

I agree with the majority that "[t]he analytical focus of a Rule 4–215 argument is at the point in the proceeding when the waiver is accepted (and relevant events leading up to that acceptance)[.]" In my opinion, however, this Court should overrule its prior holdings that every "failure to give proper advisements requires reversal." Assume, for example, a defendant convicted of voluntary manslaughter who argues that he is entitled to a new trial on the ground that the trial court failed to comply with Rule 4–215(a)(3) when the defendant stated that he wanted to fire his lawyer and represent himself at trial. If the record shows that the trial judge (1) told the defendant that the maximum penalty for voluntary manslaughter is 50 years imprisonment, but (2) complied with every other requirement in the rule, I would not grant a new trial on the ground that the defendant was incorrectly advised of the allowable penalties.

In the case at bar, the Petitioner elected to represent himself at a trial involving charges that included false imprisonment. The record shows that the Petitioner was told that (1) false imprisonment is "a common law offense," (2) "[t]here's no legal cap you can get on false imprisonment," and (3) if he were convicted of false imprisonment, he could be sentenced to any "period of incarceration that does not offend the cruel and unusual punishment provision in the Constitu-

tion." Under these circumstances, I agree with the Court of Special Appeals that "[r]eversing [the Petitioner's] conviction would simply reward [Petitioner's] *post hoc* regret about his considered choice to discharge counsel, without providing any additional protection for the right to counsel." *Brye v. State,* 181 Md.App. 105, 123, 955 A.2d 821, 831 (2008).